1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

DIANE R. OLSON,

11

Plaintiff,

12

v.

13

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

14

15

Defendant.

16

CASE NO. 13-cv-06091 JRC

ORDER ON PLAINTIFFS
COMPLAINT

17    This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18   Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19   Magistrate Judge and Consent Form, ECF No. 6; Consent to Proceed Before a United

20   States Magistrate Judge, ECF No. 7). This matter has been fully briefed (*see* ECF Nos.

21   15, 21, 22).

22    After considering and reviewing the record, the Court concludes that the ALJ

23   properly evaluated plaintiff's credibility, the lay evidence, and the medical evidence.

24

1        Therefore, as there are no harmful legal errors and the ALJ's decision is supported

2  by substantial evidence, this matter is affirmed pursuant to sentence four of 42 U.S.C. §

3  405(g).

4

5                             BACKGROUND

6        Plaintiff, DIANE R. OLSON, was born in 1971 and was 35 years old on the

7  alleged date of disability onset of February 2, 2007 (*see* Tr. 99-106; *see also* ECF No. 15,

p. 2, footnote 2). Plaintiff completed the tenth grade (Tr. 26).   Plaintiff has work

experience as count room person/cashier, manager of a mini mart and a car wash and as a

cashier (Tr. 889-90). Plaintiff's last employment was as a counter in the cash room of a

casino (Tr. 28).

        According to the ALJ, through the date last insured plaintiff had "severe

impairments related to degenerative disc disease, obesity, myofascial pain syndrome,

trigeminal neuralgia, and polysubstance dependence (20 CFR 404.1520(c))" (Tr. 756).

        At the time of the first hearing in 2010, plaintiff was living in a home with her

husband and 19-year-old step son (Tr. 26).

                   PROCEDURAL HISTORY

        Plaintiff provides the following procedural history:

Plaintiff, Diane R. Olson ("Olson") protectively filed an application for
Social Security disability benefits on August 20, 2007, alleging that she
had been disabled since January 1, 2006.[Footnote omitted.] A hearing was
held before Administrative Law Judge Richard A. Say ("the ALJ") on
January 20, 2010, who issued a decision denying Olson's disability claim
on February 5, 2010 (Tr. 5-41). Olson appealed that decision to the
Appeals Council, and then to Federal District Court, which on July 19,
2011, remanded her claim for a new hearing. (Tr. 812-25). A new hearing
was held on June 13, 2012, and the ALJ issued another decision denying

1   Olson's disability claim on July 19, 2012. (Tr. 750-94). On October 23,
2   2013, the Appeals Council denied Olson's request for review. (Tr. 743-
    46).

3   (Plaintiff's Opening Brief, ECF No. 15, pp. 1-2.)

4   In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or
5   not the ALJ properly evaluated the medical evidence; (2) Whether or not the ALJ
6   properly evaluated plaintiff's testimony; (3) Whether or not the ALJ properly evaluated
7   the lay witness evidence; (4) Whether or not the ALJ properly assessed plaintiff's residual
8   functional capacity; and (5) Whether or not the ALJ erred by basing his step five finding
9   on a residual functional capacity assessment that did not include all of plaintiff's
10  limitations (*see* ECF No. 15, p. 1).

11  

12  STANDARD OF REVIEW

13  Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's
14  denial of social security benefits if the ALJ's findings are based on legal error or not
15  supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d
16  1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.
17  1999)).

18  DISCUSSION

19  (1) **Whether or not the ALJ properly evaluated the medical evidence.**
20  

21  Following eight pages of recitation of notes from plaintiff's medical record that are
22  unconnected to any specific argument, plaintiff subsequently provides arguments specific
23  to the medical evidence, although it does not appear to be about any evidence provided
24  by "[plaintiff's] treating rheumatologist, Dr. Mark W. Layton, M.D.," as indicated in the

header of plaintiff's legal argument (*see* ECF No. 15, p. 3; *see also* pp. 3-11). Defendant

persuasively argues that the ALJ's interpretation is reasonable (*see* ECF No. 21, pp. 14-

17).

When a treating or examining physician's opinion is contradicted, that opinion can

be rejected "for specific and legitimate reasons that are supported by substantial evidence

in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v.*

*Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th

Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary

of the facts and conflicting clinical evidence, stating his interpretation thereof, and

making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing*

*Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Plaintiff first complains that the ALJ erred by giving great weight to the March

2008 opinion of a state agency nonexamining physician, Dr. Charles Wolfe, M.D.

because Dr. Wolfe only affirmed  a previous assessment on a check-box form and did not

review any medical evidence after March, 2008 (*see id.*, pp. 11-12). However, the ALJ

relied on other evidence in the record, such as plaintiff's report from May, 2009 that "she

'feels musch (sic) better now, even her pain is improved.'"(*see* Tr. 762 (*quoting* Tr. 651)).

Similarly, although plaintiff complains that "when a non-examining physician states

nothing at all in their assessment, other than that they are affirming the earlier non-

medical opinion of a non-examining non-physician, an 'ALJ may very well decide to give

less than substantial weight to such a cursory opinion,'"plaintiff has not cited a rule or

precedent that compels the ALJ to do so (*see* ECF No. 15, p. 12 (*quoting Morgan v.*

1   *Colvin*, No. 12-35107, 531 Fed. Appx. 793, 795 (9th Cir. June 21, 2013) (unpublished

2   opinion)). The Court finds no error.

3       Plaintiff also complains about the ALJ's quotation from the August 14, 2009 letter

4   from Dr. Panagiotis D. Fourtounis, M.D. and an internal note from him, and the ALJ's

5   finding that the internal note from Dr. Fourtounis "leads one to believe that he did not

6   believe she was disabled by her symptoms" (*see id.* (*quoting* Tr. 763)). The Court notes

7   the ALJ's discussion of this internal note as follows:

8

9           The expanded record includes a note from a treatment provider, which
            suggests he did not believe she was unable to work. According to an

10          entry dated in August 2009, the claimant "requests [a] letter from [her
            primary care provider] stating she had to [quit] working due to her

11          disability and that she is not 'willfully' unemployed. Needs letter stating
            she stopped working in 2007.' (Internal citation to Exhibit 20F/235-236).

12          The internal response from Panagiotis D. Fourtounis, MD, states, 'I can
            give her a letter to state she suffers from chronic pain and depression, but

13          I cannot explicitly state I told her to stop working. Ask her if that would
            work for her.'

14  (Tr. 763).

15      An ALJ may "draw inferences logically flowing from the evidence." *Sample v.*

16

17  *Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Beane v. Richardson*, 457 F.2d 758

18  (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)). However, an ALJ

19  may not speculate. *See* SSR 86-8, 1986 SSR LEXIS 15 at *22.

20      Here, the ALJ is drawing an inference which logically flows from the evidence

21  (*see* Tr. 1136-37). The Court concludes that the ALJ's finding that the internal note from

22  Dr. Fourtounis "leads one to believe that he did not believe she was disabled by her

23

24

1    symptoms" is a finding based on substantial evidence in the record and is not mere

2    speculation (*see* Tr. 763, 1136-37).

3          The ALJ also included the following discussion regarding the opinion of Dr.

4    Fourtounis:

5
             Dr. Fourtounis subsequently submitted a letter that says, "plaintiff suffers
6            from chronic pain of the cervical and thoracic spine, chronic
             fibromyalgia pain and associate fatigue. I have been her primary care
7            provider since 2005 and her pain symptoms have been getting
             progressively worse since April 2006" (internal citation to exhibit
8            20F/480). The note and letter predate the prior hearing and decision, but
             they were not entered into the record at that time. His letter is broad and
9            does not include an opinion regarding the claimant's abilities and
             limitations. His internal note leads one to believe that he did not believe
10           she was disabled by her symptoms. Accordingly, Dr. Fourtounis' August
             2009 progress note is further persuasive evidence that the claimant is not
11           disabled by her impairments.

12   (Tr. 763).

13         Based on a review of the relevant record, the Court concludes that the ALJ's

14   characterization of the letter by Dr. Fourtounis is supported by substantial evidence in the

15   record as a whole. The subsequent letter by Dr. Fourtounis indeed is broad and

16   additionally does not include any opinions regarding specific functional limitations (*see*

17   Tr. 1381). The Court also notes the remainder of the ALJ's discussion in his written

18   decision regarding the medical evidence in the record as a whole. The ALJ's discussion of

19   the medical evidence is a relatively "detailed and thorough summary of the facts and

20   conflicting clinical evidence," with an indication of the ALJ's interpretation thereof, as well

21   as his findings. *See Reddick*, *supra*, 157 F.3d at 725 (*citing Magallanes*, *supra*, 881 F.2d

22   at 751).

23

24

1    Finally, plaintiff contends that "the ALJ also errs by failing to find that [plaintiff's]

2    depression and carpal tunnel syndrome were not severe impairments (internal citation to

3    Tr. 757-59). The ALJ erred by failing to include in his residual functional capacity

4    assessment all the limitations caused by these impairments" (*see* ECF No. 15, p. 13).

5    However, regarding this general assignment of error by plaintiff to the ALJ's step two

6    determination, the Court finds persuasive defendant's argument as follows:

> With regard to the ALJ's step two findings, plaintiff states conclusively
> that the ALJ 'erred by failing to find that [plaintiff's] depression and
> carpal tunnel syndrome were not severe impairments' (internal citation to
> ECF No. 15, p. 13). Plaintiff does not argue this issue with specificity
> and therefore waves it. (Internal citation to *Greenwood v. Fed. Aviation
> Admin.*, 28 F.3d 971, 977 (9th Cir. 1994); *Indep. Towers of Wash. v.
> Washington*, 350 F.3d 925, 929 (9th Cir. 2003)). Nonetheless, the ALJ
> proceeded beyond step two and plaintiff has shown no harm. (Internal
> citation to *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001)).
> The ALJ did not find them severe-- contrary to plaintiff's argument-- yet
> expressly considered all impairments in arriving at the residual
> functional capacity. (Internal citation to Tr. 756-58, 759).

(ECF No. 21, p. 14).

The Court also notes the following discussion by the ALJ in his written decision:

> The record also supports a finding that [the] claimant has depression and
> anxiety, which are non-severe impairments. For example she underwent
> a psychiatric evaluation in November 2007. George Mecouch, D.O.,
> diagnosed the claimant with major depressive disorder, single episode,
> and assessed a global assessment of functioning (GAF) score of 60 to 65.
> (Internal citation to exhibit 5F). Based on the DSM-IV-TR, the GAF
> rating 61 to 70 constitutes some mild symptoms (*e.g.*, depressed mood
> and mild insomnia) or some difficulty in social, occupational or school
> functioning, but generally functioning pretty well, and having some
> meaningful interpersonal relationships.
>
> Upon examination, Dr. Mecouch observed that the claimant displayed no
> formal thought disorder; she also performed well on tests of memory and

concentration. The record also contains GAF assessments of 75 and 61. (Internal citation to exhibits 17 F/8, 18 F/54). Ultimately, Dr. Mecouch believed the claimant's depressive symptoms do not prevent her working, and further believed she would benefit from chronic pain counseling and a prescription of Cymbalta. In fact, the claimant was still working as a money counter [at] a casino at the time of the evaluation. Dr. Mecouch examined the claimant and proffered an opinion based on his observations and that is consistent with the objective medical evidence. Accordingly, great weight is afforded to Dr. Mecouch's opinion.

.  .  .  .

According to a treatment note dated in October 2011, [plaintiff] complained of an irritable and sad mood, overwhelming fatigue, poor memory, mood swings, and crying spells. (Internal citation to Exhibit 20 F/393). Despite these complaints, Dr. Kim described [plaintiff as] "pleasant and friendly" during their 20-minute phone appointment. Accordingly he made no changes to her medications.

.  .  .  .

The claimant was diagnosed with bilateral carpal tunnel syndrome in June 2007. (Internal citation to exhibit 3F/9). She had surgeries on her wrists in July and August 2007. (Internal citation to exhibits 3F/3-6). According to her prior testimony, she continues to have some pain in her hands. However, she also stated it has gotten much better since she had the surgeries. According to her current testimony, she has a tremor in her hands, which affects her ability to grip.

(Tr. 757-58).

For the reasons stated and based on the record as a whole, the Court concludes that the ALJ did not err in his evaluation of the medical evidence.

(2) **Whether or not the ALJ properly evaluated plaintiff's testimony**.

Plaintiff argues that because she has medical conditions which reasonably can be expected to cause her symptoms and limitations, "the ALJ could not reject the testimony about the severity of her symptoms and limitations based solely upon whether [or not] objective evidence supports the severity of her symptoms and limitations" (ECF No. 15, p.

15). However, in addition to relying on a finding that "the objective medical evidence in the updated record does not support the claimant's allegations of disability," the ALJ also relied on other findings, such as plaintiff's inconsistent statements, and her course of treatment (*see* Tr. 761; *see also* Tr. 761-63).

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A) (other citations and footnote omitted)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." *Fair, supra*, 885 F.2d at 603.

The ALJ's credibility determinations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*)).  The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony regarding symptoms, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen, supra*, 80 F.3d at 1284 (citations omitted). If an ALJ rejects the testimony of a claimant once an underlying impairment has been established, the ALJ must support the rejection "by offering specific, clear and

convincing reasons for doing so." *Smolen*, *supra*, at 1284 (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)); *see also Reddick, supra*, 157 F.3d at 722 (*citing Bunnell v. Sullivan*, *supra*, 947 F.2d at 343, 346-47).

The Court notes first that the ALJ's finding that the medical evidence does not support plaintiff's allegations is a finding based on substantial evidence in the record as a whole. The ALJ included a relatively thorough discussion of the objective medical evidence and the medical opinion evidence (*see* Tr. 756-58, 761-64), including the opinion from examining physician, Dr. Robert C Young, M.D., that "there are no clinical indications of focal neurological changes at the cervical, thoracic, or lumbosacral nerve root level, right or left side" (Tr. 761, 1286). Indeed, Dr. Young's assessment includes the following:

> ASSESSMENT:
>
> 1. Chronic myofascial pain syndrome related to chronic sleep loss and some other underlying stress causing factor and lack of regular exercise.
> 2. Musculoskeletal and soft tissue pain at the thoracic and lower back level, mostly axial
> 3. MRI evidence of disc protrusion at the thoracic level but without clinical indication of focal neurological changes at the lumbar or thoracic level, right or left side.
> 4. Chronic nonmalignant pain.
> 5. Many years history of sleep loss.

(Tr. 1286).

The recommendation and treatment plan of Dr. Young includes the following:

> 1. Time spent reviewing the clinical findings on examination. Explain to her the most likely cause her symptoms, reassuring her that there are no clinical indications of focal neurological changes at the cervical, thoracic, or lumbosacral nerve root level, right or left side.

2. She has used the TENS unit in the past with good relief and encouraged her to resume the use of the TENS unit. She is currently out of the supply of the electrodes for the TENS unit. For that reason I put in the request for her to receive additional supply of the TENS unit electrodes. I also generated a referral for her to work with physical therapy for more appropriate application of the TENS unit and the instruction of home exercise program.

3. She is also given the lumbosacral support for her to use when the low back gets painful as well as when doing the physical work around the house.

4. She is given the full review of the way to regain more restful and sufficient sleep for at least 6 to 7 hours every night.

5. She is also given the full review of the stretching and gentle strengthening exercises to the affected area.

(Tr. 1286-87). The remainder of the ALJ's discussion of the objective medical evidence also supports the ALJ's finding that the objective medical evidence does not support plaintiff's allegations of complete disability and also supports the ALJ's ultimate conclusion.

As noted, the ALJ also relied on plaintiff's inconsistent statements when failing to credit fully her allegations and testimony. For example, at her administrative hearing, plaintiff testified that on a normal day she tries to do some housework and picks just one thing, like the kitchen area or laundry (Tr. 785). When the ALJ asked what else she does, plaintiff testified "I rest." (*See id.*). However, as noted by the ALJ, according to Dr. Young, "the claimant reported typically going to bed around 9 PM in waking at 2:30 AM," to attend the needs of her husband who leaves for work early, and she needs to make breakfast and lunch for him" (*see* Tr. 761, 1286). Plaintiff neglected to mention that she prepares two meals for her husband on a daily basis during her testimony when asked specifically about what she does on a typical day. The ALJ's finding that plaintiff made

1   inconsistent statements is a finding supported by substantial evidence in the record. The

2   Court also concludes that the ALJ's reliance on this finding when making his credibility

3   determination is proper.

4          Finally, the Court also notes the ALJ's reliance on plaintiff's conservative

5   treatment, as discussed above in the context of Dr. Young's treatment records, *see supra*,

6   section 2. Even if all of the ALJ's credibility determinations are not proper, any error was

7   harmless.

8          The Ninth Circuit has "recognized that harmless error principles apply in the Social

9   Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout*

10  *v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006)

11  (collecting cases)). The court noted that "several of our cases have held that an ALJ's error

12  was harmless where the ALJ provided one or more invalid reasons for disbelieving a

13  claimant's testimony, but also provided valid reasons that were supported by the record."

14  *Id.* (citations omitted).

15         For the reasons stated and based on the record as a whole, the Court concludes that

16  the ALJ did not commit harmful error when failing to credit fully plaintiff's allegations

17  and testimony and that he provided clear and convincing reasons for his determination.

18         (3) **Whether or not the ALJ properly evaluated the lay witness evidence**.

19         Pursuant to the relevant federal regulations, in addition to "acceptable medical

20  sources," that is, sources "who can provide evidence to establish an impairment," 20 C.F.R.

21  § 404.1513 (a), there are "other sources," such as friends and family members, who are

22  defined as "other non-medical sources" and "other sources" such as nurse practitioners,

therapists and chiropractors, who are considered other medical sources, *see* 20 C.F.R. §

404.1513 (d). *See also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir.

2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); Social Security Ruling 'SSR' 06-3p, 2006 SSR

LEXIS 5 at *4-*5, 2006 WL 2329939. An ALJ may disregard opinion evidence provided

by both types of "other sources," characterized by the Ninth Circuit as lay testimony, "if the

ALJ 'gives reasons germane to each witness for doing so.'" *Turner, supra*, 613 F.3d at 1224

(*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v.

Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

   Failure to give individualized reasons for rejecting a lay witness's statement is not

per se prejudicial, if the ALJ gave well supported reasons for rejecting similar testimony.

*Molina v. Astrue*, 674 F. 3d 1104, 1117 (9th Cir. 2012).   If the ALJ has provided proper

reasons to discount the lay testimony in another aspect of the written decision, such as

within the discussion of plaintiff's credibility, the lay testimony may be considered

discounted properly even if the ALJ fails to link explicitly the proper reasons to discount

the lay testimony to the lay testimony itself. *See Molina, supra*, 674 F.3d at 1121

(*quoting Lewis, supra*, 236 F.3d at 512).

   1.   Plaintiff's husband, Sam Olson

   As noted above, *see supra*, section 2, the ALJ referenced plaintiff's report to Dr.

Young in September, 2011 that she gets up at 2:30 in the morning to make two meals for

her husband (*see* Tr. 761, 1286). However, in his September, 2007 lay statement, Mr.

Olson, when describing what plaintiff does from the time she wakes up until she goes to

bed, failed to mention that she prepares two meals for him (*see* Tr. 195). Similarly, Mr.

Olson indicated in his lay statement that "other than a sandwich or snack while I'm at work, I prepare all meals" (*see* Tr. 197).

Regarding plaintiff's testimony that she gets up at 2:30 in the morning to make two meals for her husband, the ALJ found that this "statement is wholly inconsistent with the claimant's testimony and statements submitted by the claimant's husband" (*see* Tr. 761). The ALJ also found that "upon review of the longitudinal record, the statements made to Dr. Young, made to obtain medical treatment, are more credible than the claimant's testimony which was made to support her claim for disability benefits" (*see id.*). The ALJ clearly found that Mr. Olson's lay statement was inconsistent with plaintiff's report to Dr. Young (*see id.*). This indication alone is a germane reason for the ALJ's failure to credit fully the 2007 lay statement from Mr. Olson. *See Molina, supra*, 674 F.3d at 1121 (*quoting Lewis, supra*, 236 F.3d at 512).

Mr. Olson submitted a second lay statement in June 2012 (*see* Tr. 899-901). The ALJ found that his statements "appear to be sincere and generally credible" (Tr. 764). The ALJ indicated that Mr. Olsen's statements concerning plaintiff's memory problems were accommodated into the RFC, limiting plaintiff to simple, unskilled work, noting that "Mr. Olson's statement does not include objective evidence to suggest that she is mentally incapable of such work" (*id.*). The ALJ also found that Mr. Olson's statement "does not contain persuasive evidence of a physical inability to perform the modified light exertion work contemplated by the residual functional capacity" (*id.*).

The ALJ provided additional reasons for failing to credit fully this lay statement from plaintiff's husband, including the ALJ's finding that "much of the statement is based

on the claimant's subjective reports" (*id.*). The ALJ substantiated this finding by noting that

although he stated that plaintiff has worked since she was 13 years old, according to his

prior statement, he had known plaintiff only for six years as of 2007 (*id.*). The ALJ

concluded that "[c]onsequently, he did not know the claimant when she was 13 years old"

(*id.*). The ALJ also supported his finding by noting that "a review of the claimant's earning

record shows that she first posted income in 1987, when she was 16 years old" (*id.*). Thus,

the ALJ found that Mr. Olson's June, 2012 statement largely was based on plaintiff's

subjective reports, which were demonstrated not to be true (*see id.*). The ALJ found that

Mr. Olson's statements "are of limited value in determining the claimant's specific residual

functional capacity as of her alleged onset date" (*see id.*). The Court concludes that the

ALJ's findings in this regard are supported by substantial evidence in the record.

   For the reasons stated, the Court concludes that the ALJ provided germane

rationale for the failure to credit fully the lay statements from plaintiff's husband.

    2. Plaintiff's work manager statement

   Plaintiff also disputes the rationale by the ALJ for his failure to include more

limitations in the RFC as a result of the Work Activity Questionnaire submitted by

plaintiff's manager from New Phoenix and Last Frontier Casinos, dated in March 2007

(*see* ECF  No. 15, pp. 21-22; *see also* Tr. 142-43). The ALJ included the following

discussion regarding this questionnaire:

> The record includes a Work Activity Questionnaire submitted by a
> manager from New Phoenix and Last Frontier Casinos, dated in March
> 2007. (Internal citation to exhibit 2E). According to the check-box form,
> the claimant was working 18 hours per week, which was down from 27
> hours per week. She was not completing all the usual duties required for

1   her position; she was being given fewer or easier duties; and she needed
additional lifting restrictions. Finally, it states she was working at 50%
2   or less of the other employees' productivity. This statement receives
limited weight for multiple reasons. First it does not objectively describe
3   any medical or psychological reason for the claimant's allegedly poor
performance. Second, the altered duties appeared to be based solely on
4   her subjective requests. Third, the record includes another 'statement'
from the claimant's employer, dated five months later, which showed she
5   was still working at the casino, despite allegedly working at half the
productivity of her coworkers. Fourth, the vocational expert testified that
6   the claimant's past relevant work is inconsistent with the residual
functional capacity. Consequently, her alleged poor performance at this
7   job is not evidence she is disabled and cannot perform any other work
found in the national economy.
8
9   (Tr. 764).

10        It is clear from the written decision that the ALJ found that the restrictions

11   discussed in this statement appeared to be based on plaintiff's request and did not include

12   any information demonstrating any limitation on the basis of plaintiff's inability to

13   perform. This finding by the ALJ is buttressed by the indication in the Questionnaire that

14   plaintiff was able to complete her work in the same amount of time as those employed in

15   similar positions (*see* Tr. 142). The ALJ also inferred that plaintiff's work product must

16   have been sufficient, since five months later "she was still working at the casino" (*see* Tr.

17   194, 764).

18

19        For the reasons discussed, and based on the record as a whole, the Court concludes

20   that the ALJ provided germane rationale for failing to include any further limitation into

21   plaintiff's RFC as a result of this Work Activity Questionnaire.

22

23        (4) **Whether or not the ALJ assessed properly plaintiff's residual functional
            capacity ("RFC").**
24

Plaintiff's argument that the ALJ improperly assessed plaintiff's RFC relies on plaintiff's previous arguments, *see supra*, sections 1 through 3. Plaintiff argues that the RFC finding "is not supported by substantial evidence, as it is based on the ALJ's failure to include all the limitations described by [plaintiff], as well as the limitations described by Mr. Olson and limitations described by [plaintiff's] former employer" (*see* ECF No. 15, p. 23). Because the Court already has concluded that the ALJ's failure to include all the limitations described by plaintiff, her husband, and her former employer was proper, *see supra*, section 1-3, and based on the record as a whole, the Court concludes that the ALJ's RFC is without harmful error.

      (5) **Whether or not the ALJ erred by basing his step five finding on a residual functional capacity assessment that did not include all of plaintiff's limitations**.

Similarly, plaintiff's argument regarding an ALJ error at step five depends on plaintiff's previous arguments that already have been discussed by the Court, *see supra*, sections 1 through 3. Plaintiff argues that the VE testimony "was made in response to a hypothetical that did not include all of [plaintiff's] limitations" (*see* ECF No. 15, p. 24). However, the Court already has concluded that the ALJ's RFC is proper and does not contain harmful error, *see supra*, section 4. For this reason and based on the record as a whole, the Court concludes that the ALJ's step five finding is proper and without harmful legal error.

<u>CONCLUSION</u>

1         Based on the stated reasons and the relevant record, the Court **ORDERS** that this

2    matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

3         **JUDGMENT** should be for defendant and the case should be closed.

4         Dated this 21ˢ day of October, 2014.

9    _____

10   J. Richard Creatura
     United States Magistrate Judge